UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:09-cv-334-FDW-DSC

| | |
|---|---|
| DARRELL BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | **UNDER SEAL**[1] |
| LLOYD LAYMAN SHOPE, ENTERPRISE ) | |
| CAR RENTAL, FORD MOTOR ) | |
| COMPANY, and FORD AIRBAG ) | |
| MANUFACTURER, ) | |
| ) | |
| Defendants. ) | |
| ) | |

THIS MATTER is before the Court upon *pro se* Plaintiff's "Motion to Alter or Amend" Judgment (Doc. No. 55); "Motion to Supplement Record" (Doc. No. 56); and "Supplemental Motion to Consider Evidence of Domicile" (Doc. No. 68). For the reasons set forth, the Court GRANTS Plaintiff's "Motion to Supplement Record" (Doc. No. 56); DENIES Plaintiff's "Motion to Alter or Amend" Judgment (Doc. No. 55); and DENIES AS UNTIMELY Plaintiff's "Supplemental Motion to Consider Evidence of Domicile" (Doc. No. 68).

## I. BACKGROUND

Plaintiff filed the above motions following the Court's dismissal of Plaintiff's action for lack of diversity jurisdiction under 28 U.S.C. § 1332. (Doc. No. 53). This Court dismissed Plaintiff's action in its May 21, 2010 order, concluding that there was lack of complete diversity between the parties because two Defendants were citizens of North Carolina, and Plaintiff was also a citizen of North Carolina.

---

[1] This order is under seal due to the numerous references to statements contained in a presentence investigation report.

Plaintiff timely filed his "Motion to Alter or Amend" Judgment. See Fed. R. Civ. P. 59(e). However, Plaintiff filed his "Supplemental Motion to Consider Evidence of Domicile" on December 30, 2010, well after the deadline of November 19, 2010, set by this Court for Plaintiff to supplement the record. Accordingly, the Court deems Plaintiff's "Supplemental Motion to Consider Evidence" untimely.[2]

In his "Motion to Alter or Amend" Judgment, Plaintiff Brooks contends that this Court erred in determining that he was a North Carolina citizen for diversity purposes, and not a South Carolina citizen, as Plaintiff claims. Plaintiff attached a South Carolina voter registration record to his motion, which Plaintiff had never presented for prior consideration. As a result, the Court requested supplemental briefing on what impact, if any, Plaintiff's voter registration and other submissions had upon this Court's jurisdiction. (Doc. No. 61).

After receiving the supplemental briefs, this Court held an evidentiary hearing on October 5, 2010. The Court heard testimony from Plaintiff Brooks, and considered other evidence submitted by both parties. By considering additional evidence submitted by Plaintiff, the Court in essence granted Plaintiff's "Motion to Supplement Record" (Doc. No. 56), but wishes to clarify this ruling.

During the hearing, Plaintiff, who is presently incarcerated, claimed he had no notice of the hearing and was unprepared. However, the Court noticed the hearing in August 2010, and made logistical arrangements with the Bureau of Prisons to hold the hearing via video teleconference. With Plaintiff's consent, the Court proceeded with the hearing, and ultimately took Plaintiff's "Motion to Alter or Amend" Judgment under advisement.

---

[2] The Court has reviewed the information contained within Plaintiff's Supplemental Motion, and even if it were deemed timely, the information would have no bearing on the Court's decision as the Court has already considered similar arguments by Plaintiff.

After the hearing, Plaintiff submitted a "Motion to Stay Proceedings and for Continuance of the Evidentiary Hearing." (Doc. No. 64). Plaintiff claimed he was prejudiced because he was unable to present evidence to refute Defendants' arguments because he lacked notice of the hearing. The Court granted in part and denied in part Plaintiff's motion, and allowed Plaintiff to supplement the record by submitting sworn affidavits from Plaintiff or other witnesses by Friday, November 19, 2010. (Doc. No. 65). Subsequently, Plaintiff submitted an affidavit from his mother, Edie Brooks, and a supplemental brief. (Doc. No. 66 and 67).[3]

## II. FINDINGS OF FACT

Based upon the evidentiary hearing and record, the Court now issues the following findings of fact:

1. On June 27, 2006, Plaintiff was involved in a two-vehicle accident that occurred in Mecklenburg County, North Carolina, between Plaintiff's vehicle and a tractor-trailer driven by Defendant Lloyd Shope.

2. Plaintiff testified that he rented the car involved in the accident, a 2006 Ford Focus, in Charlotte, North Carolina, from Enterprise Car Rental.

3. Plaintiff testified that he received medical treatment in North Carolina following this accident, except for physical therapy, which Plaintiff received in South Carolina.

4. Plaintiff, who is proceeding *pro se*, filed an action seeking to recover for personal injuries resulting from the accident in U.S. District Court for the Southern District of New York based on diversity jurisdiction. (Doc. No. 1).

---

[3] Plaintiff's submissions were also received a few days after the deadline imposed by the Court. However, the Court, in its discretion, will consider these submissions because both documents appear to have been submitted to the prison authorities to be mailed prior to the Court's deadline.

5. Chief Judge Loretta A. Preska of the U.S. District Court Southern District of New York issued an order on July 27, 2009, transferring the matter to the Western District of North Carolina in accordance with 28 U.S.C. §§ 1391(a) and 1406(a) since three of the Defendants resided in Charlotte, North Carolina, and the accident occurred in Mecklenburg County, North Carolina. (Doc. No. 1).

6. Due to events unrelated to the present action, Plaintiff was incarcerated at a correctional facility in Brooklyn, New York, at the time of filing, but has since been transferred to a facility in Butner, North Carolina.

7. Plaintiff asserted in his original Complaint that he was a citizen of New York due to his incarceration there. (Doc. No. 1-1).

8. After learning of the prisoner's domicile rule, Plaintiff asserted he was a citizen of South Carolina.[4]

9. Plaintiff maintained a North Carolina driver's license that apparently remained valid until March 2010. (Doc. No. 34, Ex. 3).

10. At an evidentiary hearing before this Court, Plaintiff originally testified that he was never registered to vote in North Carolina, but later recalled that he was, in fact, registered to vote in North Carolina.

11. According to public records, Plaintiff was registered to vote in North Carolina since 2005,

---

[4] Plaintiff makes this assertion in several documents submitted to this Court, two of which Plaintiff labeled as "Verified Complaint" though Plaintiff never asked permission from this Court for leave to amend his Complaint. (Docs. Nos. 44 and 46). The Clerk's office docketed these submissions as "Responses" and not as an "Amended Complaint" in CM/ECF because Plaintiff also titled these submissions as "Plaintiff [*sic*] Objections & Memorandum of Law in Opposition to Defendant Enterprise Rent-A-Car Dismissal Request" (Doc. No. 44) and "Plaintiff [*sic*] Objections & Memorandum of Law in Opposition to Lloyd Layman Shope Dismissal Request." (Doc No. 46).

and apparently remains eligible to vote.[5] (Doc. No. 34, Ex. 2).

12. Plaintiff, as part of his "Motion to Alter or Amend" Judgment, submitted a copy of his South Carolina voter registration, dated September 23, 2008. (Doc. No. 55 at 8).[6]

13. After failing to report to his pretrial officer, Plaintiff was arrested on March 20, 2008, within the Western District of North Carolina and was transferred into the custody of the U.S. Marshals Service. (Doc. No. 62-1 at 6).

14. Plaintiff pleaded guilty on October 3, 2008, to conspiracy to transport firearms between South Carolina and New York. (Doc. No. 62-1 at 1, 3).

15. After his arrest in March 2008, Plaintiff remained detained while awaiting sentencing.

16. Plaintiff testified that he submitted his application for South Carolina voter registration one (1) or two (2) years earlier, but only received the South Carolina voter registration card in September 2008, while he was being detained. The Court finds Plaintiff's testimony that he applied for the voter registration one (1) or two (2) years earlier highly dubious based on the South Carolina's voter registration procedures and rules. See infra pp. 11-12.

17. Plaintiff testified that he worked in North Carolina in 2004 for United Van Lines.

18. Plaintiff was unemployed during the time period between the accident in question and his incarceration. (Doc. No. 62-1 at 16).

19. Plaintiff testified that he did not pay income taxes in North Carolina or South Carolina.

20. Plaintiff testified that he lived in North Carolina for only about six months. Plaintiff also submits an affidavit submitted by his mother, Edie Brooks, to corroborate such testimony.

---

[5] Based on Plaintiff's criminal record, it is likely an error that Plaintiff remains eligible to vote.

[6] Even after a Roseboro notice was issued, Plaintiff did not submit this evidence for consideration when the Court originally ruled upon Defendants' motions to dismiss. Rather, this evidence was submitted as part of Plaintiff's "Motion to Alter or Amend" Judgment.

(Doc. No. 66). However, the Court finds Plaintiff's statement is not credible because a public records search indicates that Plaintiff maintained a residence in Charlotte, North Carolina, at least between August 2005 and September 2007. (Doc. No. 34, Ex. 1). Plaintiff also informed pretrial services on February 6, 2008, that he was residing in North Carolina with Ms. Michelle Spratt, Plaintiff's child's mother. (Doc. No. 62-1 at 6, 13).

21. When a pretrial officer went to the North Carolina address in March 2008, Ms. Spratt indicated that Plaintiff was now living in South Carolina with an uncle. (Doc. No. 62-1 at 6, 13). Plaintiff, in a contradictory statement, also informed pretrial services that he had lived with his mother in South Carolina for four years prior to his arrest in 2008, but the presentence report indicates in a footnote that Plaintiff previously had indicated he had been residing in North Carolina. (Doc. No. 62-1 at 13).

22. Plaintiff lived in South Carolina with his mother sometime following September 2007, (Doc. No. 34, Ex. 1), and Plaintiff's mother's address is listed on his presentence report as his legal address.

23. Plaintiff stated in pleadings that "he was striving to establish gainful employment before relocating back to Charlotte, North Carolina[,]" where his child and child's mother resided, but he was "forced to reside with his mother in South Carolina," due to the injuries sustained from the accident. (Doc. No. 46 at 8; Doc. No. 44 at 6-7). Plaintiff also stated that he was "visiting his mother in South Carolina," which Plaintiff asserts "became his formal place of residence." (Doc. No. 44 at 6). The Court finds these statements are indicative of Plaintiff's intent to return to North Carolina. Though Plaintiff now urges that his intent was to remain in South Carolina, the Court finds these statements are not credible because Plaintiff attempted to change his statements about his intentions following the Court's dismissal of

the case for lack of diversity jurisdiction.

24. Plaintiff's only listed asset in his presentence report was a 1999 Ford Econoline Cargo Van. Plaintiff registered the van in North Carolina, and the registration expired on August 31, 2008, at which point Plaintiff was already detained. (Doc. No. 34 at 4; Doc. No. 62-1 at 16).

25. Plaintiff testified at the evidentiary hearing that his vehicle was insured in North Carolina.

26. Plaintiff testified that he maintained both his registration and insurance in North Carolina while he resided with his mother in South Carolina.

27. Plaintiff received a citation for failure to transfer tags from authorities in South Carolina, but Plaintiff testified that he purposely never transferred his tags to South Carolina after receiving the citation because it was too expensive to re-register the vehicle and obtain insurance. Instead, Plaintiff purposely maintained his North Carolina registration and insurance for some time because it was financially beneficial to do so.

### III. CONCLUSIONS OF LAW

Plaintiff asks this Court to alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). As an initial matter, such motions are not generally granted absent "highly unusual circumstances." See U.S. ex rel. Becker v. Westinghouse Savannah River Co., 305 F.3d 284, 290 (4th Cir. 2002) (recognizing a mere disagreement with the court's ruling will not support Rule 59(e) relief) (citations omitted). As part of his Motion, Plaintiff submitted a South Carolina voter registration card and other evidence, such as a presentence investigation report, which were not part of the original record when the Court dismissed Plaintiff's action. Though the Court believes it could have properly declined to review Plaintiff's motion since the evidence appeared to be available earlier, the Court felt compelled to hold an evidentiary hearing based on the specific circumstances in this case. Based on the record and evidence submitted at the hearing , the Court

makes the following conclusions of law, and for the reasons set forth DENIES Plaintiff's "Motion to Alter or Amend" Judgment.

**A. Diversity Jurisdiction Requirements**

Federal courts have limited subject matter jurisdiction, and thus, "there is no presumption that the court has jurisdiction." Pinkley, Inc. v. City of Frederick, 191 F.3d 394, 399 (4th Cir. 1999). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." Id. The party asserting jurisdiction, which is Plaintiff in this case, "shoulders the burden of proving by a preponderance of the evidence that diversity exists." Hanks v. Coan, No. 1:99CV00119, 1999 WL 1938851, at *2 (M.D.N.C. August 17, 1999) (citing Nat'l Artists Mgmt. Co. v. Weaving, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991)); McPherson v. Highlander Rentals, Inc., No. 4:07-CV-162-F, 2008 WL 2149765, at *3-4 (E.D.N.C. May 21, 2008).

Here, Plaintiff asserts that this Court has jurisdiction over his claim based on diversity jurisdiction.[7] Federal district courts have diversity jurisdiction in actions between "citizens of different states" and "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Complete diversity must exist among the parties, meaning no defendant can have the same citizenship as any plaintiff. See, e.g., Wisconsin Dep't. Of Corrs. v. Schacht, 524 U.S. 381, 388 (1998); Owen Equip. and Erection Co. v. Kroger, 437 U.S. 365, 373 (1978).

**B. Domicile for the Purposes of Diversity Jurisdiction**

A person is a citizen of the state in which he is domiciled. Ward v. Walker, 725 F. Supp. 2d

---

[7] In a cursory fashion, Plaintiff also appears to assert federal question jurisdiction under the due process and equal protection clauses of the Fourteenth Amendment, but does not include any factual allegations to support this contention. Plaintiff has sued in federal court to recover for personal injuries sustained in an accident, and considering this, the Court finds no legitimate basis for federal question jurisdiction.

506, 509 (D. Md. 2010). Typically, the domicile of the parties at the time of commencement of the action determines whether the requisite diversity exists, but where one party is a prisoner, courts generally look to the prisoner's domicile prior to incarceration, which is also known as prisoner's domicile rule.[8] Roberts v. Morchower, 956 F.2d 1163, 1163 (4th Cir. 1992) (unpublished) (citing Polakoff v. Henderson, 370 F. Supp. 690, 693 (N.D. Ga. 1973), aff'd 488 F.2d 977 (5th Cir. 1974)); Rowland v. Patterson, 882 F.2d 97, 98 (4th Cir. 1989) (citations omitted); Ownby v. Cohen, 19 F. Supp. 2d 558, 563 (W.D. Va. 1998), aff'd 194 F.3d 1305 (4th Cir. 1999); Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., et al., No. 3:09-cv-220-MU, 2010 WL 1434298, at * 2 (W.D.N.C. April 6, 2010) (citations omitted); 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3618 (3d ed.).

Generally, for purposes of diversity jurisdiction, domicile requires a party's physical presence in a state coupled with an intent to remain there permanently. Johnson v. Advance America, 549 F.3d 932, 937 n. 2 (4th Cir. 2008) (citations omitted). It is also the place he intends to return whenever he is away. Mayfield, 2010 WL 1434298, at *2 (citing Hollowell v. Hux, 229 F. Supp. 50, 52 (E.D.N.C. 1964)). "Although a person may have more than one residence, [he] may have only one domicile at any one time." Hanks, 1999 WL 1938851, at *1 (citing Nat'l Artists Mgmt. Co., 769 F. Supp. at 1227). In determining a person's domicile, the court must look to the totality of the circumstances. Id. at *3 (citing Nat'l Artists Mgmt. Co., 769 F. Supp. at 1228). The court may consider factors such as:

---

[8] There is a presumption that a prisoner retains his domicile prior to his incarceration, but this presumption may be rebutted by "a prisoner who could show facts sufficient to indicate a *bona fide* intention to change his domicile to the place of his incarceration." See Madow v. Berlowitz, C/A No. 2:07-2760-MBS-RSC, 2008 WL 1787630, at *2 (D.S.C. April 17, 2008) (citing Jones v. Hadican, 552 F.2d 249, 251 (8th Cir. 1977)). The Court finds that Plaintiff has presented no evidence to rebut such a presumption, and, therefore, the law instructs the Court to consider only Plaintiff's domicile prior to his incarceration.

the person's declarations, place of business, payment of taxes, house of residence, driver's license and automobile registration and title, ownership of real and personal property, telephone number and listing, payment for utilities, receipt of mail, and exercise of political rights or satisfaction of the domicile's requirements to register to vote.

Mayfield, 2010 WL 1434298, at * 2 (citing Janeau v. Pitman Mfg. Co., No. C-C-90-194-V, 1991 WL 538679, at *3 (W.D.N.C. Oct. 25, 1991)).

While "a person's own statement of intent with respect to acquiring or retaining a domicile may be relevant, it 'is not conclusive. . . and is to be accepted with considerable reserve.'" Hanks, 1999 WL 1938851, at *3 (quoting Webb v. Nolan, 361 F. Supp. 418, 421 (M.D.N.C. 1972), aff'd 484 F.2d 1049, 1050 (4th Cir. 1973)). "[A] mere change in residence by itself is insufficient to alter one's domicile or citizenship." Janeau, 1991 WL 538679, at *3 (citations omitted). To effect a change in domicile, an individual "must take up residence in a different domicile with the intent to remain there." Id.

Here, this Court has provided *pro se* Plaintiff numerous opportunities to show that subject matter jurisdiction exists, but ultimately Plaintiff has failed to meet his burden. As an initial observation, there is no question that Plaintiff has ties to both North Carolina and South Carolina, but the determination this Court must make is where was Plaintiff domiciled prior to his incarceration for purposes of diversity jurisdiction.

1. Plaintiff's statements about his domicile

The Court will first examine Plaintiff's statements about his domicile. Plaintiff originally asserted in his Complaint that he was domiciled in New York, due to his incarceration there. Once Plaintiff learned of the prisoner's domicile rule, Plaintiff then asserted that he was a citizen of South Carolina prior to his incarceration. Plaintiff has asserted his South Carolina citizenship in several

court documents, but Plaintiff never formally amended his Complaint to reflect his new contention. See supra p. 4, n. 4.

Plaintiff testified at the evidentiary hearing that his intent was to be domiciled in South Carolina, but Plaintiff's statements contained in earlier pleadings before the Court dismissed his Complaint seem to indicate otherwise. Plaintiff specifically stated that "he was striving to establish gainful employment before relocating back to Charlotte, North Carolina[,]" where his child and child's mother resided, but that he was "forced" to live with his mother in South Carolina due to his injuries sustained from the accident in question. (Doc. No. 46, at 8; Doc. No. 44 at 6-7). Plaintiff also stated that he was "visiting" his mother in South Carolina, which Plaintiff asserts "became his formal place of residence." (Doc. No. 44 at 6). The Court finds these statements tend to reveal Plaintiff's real intent was not to remain in South Carolina, but instead to return to North Carolina and that he was merely residing with his mother due to circumstances at the time.

Further, Plaintiff was arrested in the Western District of North Carolina in March 2008, and not in South Carolina. Plaintiff also previously told pretrial services in February 2008, that he was residing in North Carolina. Both of these facts show Plaintiff had a continued presence in North Carolina prior to his incarceration. Of course, Plaintiff later made contradictory statements to pretrial services that he had lived with his mother for the past four years, but a public records search show that this statement was not true. The public records search indicates that Plaintiff maintained a North Carolina residence from at least 2005 to 2007.

2. Other Factors Relevant to Domicile

The Court now turns to other factors in considering domicile. Plaintiff maintained a valid voter registration in North Carolina, but now, as part of his "Motion to Alter or Amend" Judgment, presents a South Carolina voter registration card. The Court questions, as noted in its findings of

fact, the impact of the South Carolina voter registration on Plaintiff's domicile since it was received by Plaintiff in September 2008, months following his arrest and continuous detention. South Carolina also has minimal residency requirements for voter registration. Specifically, there is no length of residency required in South Carolina in order to register to vote. See "South Carolina State Election Commission Home Page," available at http://www.state.sc.us/scsec/resrequi.htm; compare "North Carolina State Board of Elections," "Residency for Voting Purposes," available at http://www.sboe.state.nc.us/content.aspx?id=120). As a result, this Court cannot affirmatively conclude that the South Carolina voter registration establishes that Plaintiff was domiciled there for the purposes of diversity jurisdiction given he had been detained for several months prior to his receiving the registration card.

Plaintiff also maintained a North Carolina driver's license, but not a South Carolina license. Plaintiff worked in North Carolina for a brief period, but was unemployed between the time of the accident and his incarceration. Plaintiff did not pay taxes in either North Carolina or South Carolina. Plaintiff's only asset was a 1999 Ford Econoline Cargo Van. In his own testimony before this Court, Plaintiff admitted that he kept his van registered and insured in North Carolina, even after receiving a citation in South Carolina for failure to transfer his tags, because it was financially beneficial to do so. This shows that Plaintiff was merely residing in South Carolina,[9] and did not intend to establish domicile there because he purposely chose to keep his driver's license, registration, and insurance in North Carolina. Plaintiff cannot avail himself of the laws and privileges of citizenship of North Carolina, but then claim domicile in South Carolina to create

---

[9] This assumes that Plaintiff was actually residing in South Carolina with his mother, but as the Court has noted, Plaintiff reported to pretrial services initially that he was residing in North Carolina, and was arrested within the Western District of North Carolina in March 2008.

diversity jurisdiction in the federal court. Based on the totality of the circumstances, the Court finds Plaintiff was domiciled in North Carolina, and not South Carolina, prior to his incarceration. Since two Defendants are citizens of North Carolina, there is no complete diversity between the parties and this Court lacks jurisdiction to hear this matter. As a result, the Court DENIES Plaintiff's "Motion to Alter or Amend" Judgment. (Doc. No. 55).

Though this Court does not have jurisdiction, Plaintiff is not without legal recourse. Plaintiff may opt to re-file his action in an appropriate state court within the applicable time frame provided by law.

## IV. CONCLUSION

ACCORDINGLY, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

1. Plaintiff's "Motion to Supplement the Record" (Doc. No. 56) is GRANTED;

2. Plaintiff's "Motion to Alter or Amend" Judgment (Doc. No. 55) is DENIED; and

3. Plaintiff's "Supplement Motion to Consider Evidence of Domicile" (Doc. No. 68) is DENIED AS UNTIMELY.

The Clerk is directed to send a copy of this Order marked "Legal Mail" to Plaintiff at his address of record, which is Register #16183171, c/o Federal Correctional Institution, P.O. Box 1000, Butner, North Carolina, 27509, and to the Fourth Circuit case manager.

IT IS SO ORDERED.

Signed: January 13, 2011

Frank D. Whitney
United States District Judge

SEALED DOCUMENT with access to All Parties/Defendants